IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: ) | | |
| JAMES RAY MAXEY ) | | |
| ) | Case No. 08-20466 | |
| Debtor. ) | Chapter 7 | |
| _____) | | |
| ) | | |
| DAVID DUVALL, ) | Adversary No. 08-2025 | |
| Plaintiff, ) | | |
| v. ) | | |
| ) | | |
| JAMES RAY MAXEY, ) | | |
| Defendant. ) | | |
| ) | | |

**MEMORANDUM OPINION**

This adversary comes before the Court on the Complaint filed by plaintiff David Duvall ("Plaintiff") against James Ray Maxey ("Defendant" or "Debtor"). Plaintiff argues that the debt owed to him by Debtor in the amount of $200,000 should be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) and that Debtor should be denied a discharge pursuant to 11 U.S.C. §§727(a)(2), (a)(3) and (a)(4). A trial was held on November 19, 2008 and the Court took the matter under advisement. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J). This Memorandum Opinion contains my Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure as made applicable to this matter by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For all the reasons set forth below, the Court finds insufficient evidence to substantiate any of the claims raised by Plaintiff pursuant to §§727(a)(2), (a)(3) or (a)(4) and will therefore, grant Debtor a discharge. The Court finds the evidence similarly insufficient to substantiate a claim under §523(a)(6) and Debtor's debt

owed to Plaintiff in the amount of $200,000 will be discharged.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 2003, Plaintiff filed a Petition in the Circuit Court of Boone County against Debtor for damages resulting from Debtor reporting to the police: (1) that Plaintiff had child pornography on his computer, (2) that Plaintiff's brother showed the child pornography to Debtor's minor son, (3) that Plaintiff was growing marijuana in his home, (4) that Plaintiff was molesting children in the neighborhood, and (5) that Plaintiff was engaged in the unauthorized practice of law.[1] Debtor filed a *pro se* answer to the Petition, which was struck from the record by the state court as a sanction for Debtor's refusal to comply with discovery requests. On June 14, 2004 an interlocutory Order of Default against Debtor was entered by the state court as a sanction for his obstruction of the discovery process. On March 10, 2006, an evidentiary hearing was held on damages and a judgment was entered by the state court against Debtor, which is herein referred to as the Judgment. Debtor did not appear at the evidentiary hearing. The state court awarded Plaintiff $50,000 for actual damages and $150,000 for punitive damages. On or about June 23, 2006, Debtor filed a Notice of Appeal, and appealed the Judgment. On March 18, 2008, the Missouri Court of Appeals entered an order denying Debtor any relief on appeal and affirming the Judgment.[2]

On March 21, 2008, Debtor filed for protection under Chapter 7 of the Bankruptcy Code and on May 13, 2008, Plaintiff filed this adversary. Plaintiff filed a motion for summary judgment on the §523(a)(6) claim, which this Court denied. A trial was held on each of the claims asserted in

---

[1] Neither the Petition nor the transcript from the state court action are part of the record, therefore, the Court's recitation of the facts and the procedural history is based on the recitations in the Judgment and the pleadings in the adversary.

[2] *Duvall v. Maxey,* WD66986 (Mo. App.2008).

2

Plaintiff's Complaint and the Court took the matter under advisement.

Plaintiff, Debtor and their families appear to have a protracted and very complicated history, the genesis of which was not revealed at trial, nor is it material to the Court's ultimate finding. Plaintiff's twin brother, John Duvall, was charged and convicted of statutory sodomy of Debtor's minor son, James T. Maxey. Debtor's son did not testify at trial, but was described by his father as having mental health limitations which prevent him from having a regular 40 hour a week job, but as being physically capable of performing odd jobs such as mowing lawns, installing televisions and engaging in light construction work.

Plaintiff contends that Debtor's debt to him should be non-dischargeable pursuant to §523(a)(6) because Debtor willfully and maliciously intended to harm Plaintiff's reputation, and therefore his ability to produce an income, by reporting to the police that Plaintiff had child pornography on his computer, that Plaintiff had molested children in the neighborhood, that Plaintiff was engaged in the unauthorized practice of law and that Plaintiff was growing marijuana in his home. Plaintiff contends that the impetus for Debtor's report to the police was rooted in Debtor's personal hatred for Plaintiff. Debtor denies any personal agenda with regard to the information he provided to the police regarding Plaintiff's alleged criminal conduct and asserts that he simply reported to the legal authority information that he received from his son and others in the community.

Plaintiff contends Debtor should be denied a discharge pursuant to §727(a)(2) for allegedly transferring his personal property to his corporation or to third parties without recording the transfers, within one year before he filed his bankruptcy petition, in an attempt to avoid paying the Judgment. Debtor denied intentionally transferring property for an improper purpose.

Plaintiff contends that Debtor should be denied a discharge pursuant to §727(a)(3) for

allegedly failing to keep or preserve adequate business records from which Debtor's business transactions could be ascertained. Debtor denied this allegation. He provided the Court with pay statements and tax returns and explained that he does not have many business documents other than receipts for expenses and pay stubs.

Plaintiff contends that Debtor should be denied a discharge pursuant to §727(a)(4) for knowingly and fraudulently failing to disclose a number of assets in on his Schedule B and for intentionally minimizing his son's and spouse's income on his Schedule I. Debtor denies this allegation and provides an explanation for each and every asset that is placed in question. He and his spouse contend that he has properly reported her income in his Schedules and he contends that his son's extra income is too sporadic and insignificant to warrant reporting.

## II. LEGAL ANALYSIS

### A. Objections to Discharge

### 1. General Principles and Burden of Proof

Obtaining a discharge is the key component of the "fresh start" a bankruptcy proceeding is designed to give a debtor. Accordingly, denying a discharge to a debtor is considered to be a "harsh and drastic penalty." *American Bank of Spikard-Trenton v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n. 1 (Bankr. W.D. Mo.1985). For that reason, the grounds for denial of discharge listed in § 727 are strictly construed in the favor of the debtor. *Florte L.L.C., et al v. Sendecky (In re Sendecky)*, 283 B.R. 760, 765 (B.A.P. 8th Cir.2002); *Gray v. Gray (In re Gray)*, 295 B.R. 338, 343 (Bankr. W.D. Mo.2003); *In re Stanke*, 234 B.R. 449, 456 (Bankr. W.D. Mo.1999). A creditor requesting that the court deny a debtor a discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *Sendecky*, 283 B.R. at 763;

*Gray*, 295 B.R. at 343; *Kirchner v. Kirchner (In re Kirchner)*, 206 B.R. 965, 973 (Bankr. W.D. Mo.1997).

### 2. §727 (a)(2): Transfer or Concealment With Intent to Hinder, Delay or Defraud Creditors

To make a case for denial of discharge under §727(a)(2), a plaintiff must demonstrate that the debtor transferred, removed, destroyed, mutilated or concealed assets that might otherwise have been available to satisfy the claims of creditors. *See Sendecky*, 283 B.R. at 763. Actual, subjective intent to hinder, delay or defraud must be demonstrated as a prerequisite to denial of discharge. *McCormick v. Security State Bank*, 822 F.2d 806, 808 (8th Cir.1987); *Stanke*, 234 B.R. at 457; *Diamond Bank v. Carter (In re Carter)*, 203 B.R. 697, 706 (Bankr.W.D. Mo.1996); *In re Berry*, 37 B.R. 44, 46 (Bankr. W.D. Mo.1983).

Plaintiff asserts in the Complaint that Debtor should be denied a discharge pursuant to §727(a)(2) because he formed J. Lue. Siding, LLC and transferred his personal assets to that company without recording said transfers in an effort to avoid paying the Judgment and that he transferred title to a 1998 Ford pick-up truck to a third party insider. Debtor admits that he incorporated J. Lue. Siding, LLC, but denies that he transferred any assets to that entity in an attempt to hinder, defraud or delay Plaintiff. Plaintiff failed to produce any evidence regarding which assets he believes were transferred to this corporation, on which date(s) they were allegedly transferred and how said transfer(s) was done in such a way to defraud Plaintiff. Therefore, the Court finds that Plaintiff has failed to meet his burden on this allegation. Regarding the alleged fraudulent conveyance of the 1998 Ford pick-up truck, Debtor testified that this vehicle was his wife's and that it was involved in an accident in 2006. The evidence is that

Debtor's insurance company paid on the claim and that Debtor did not own the truck at the time he filed his bankruptcy petition. The Court finds there is no evidence to support a denial of discharge based on Plaintiff's claim that Debtor transferred personal assets in an attempt to defraud Plaintiff.

### 3. §727(a)(3): Failure to Maintain Adequate Books and Records

A debtor may be denied a discharge, pursuant to §727(a)(3), for failure to keep or preserve books and records from which his financial situation may be ascertained, unless the failure is justified under all the circumstances of the case. *Riley*, 305 B.R. at 882. Intent is not an element of this ground for denial of discharge; the standard imposed is one of reasonableness. *Riley*, 305 B.R. at 882, *citing Davis v. Wolfe (In re Wolfe)*, 232 B.R. 741, 745 (B.A.P. 8th Cir.1999). In determining the adequacy of the records maintained, the Court should consider the complexity of the debtor's business, the customary business practices for record keeping in that type of business, the degree of accuracy of existing books, and the debtor's courtroom demeanor. *Riley*, 305 B.R. at 883, *citing Sendecky*, 283 B.R. at 764; *see also, Milam v. Wilson (In re Wilson),* 33 B.R. 689, 692 (Bankr. M.D. Ga.1983) (the inquiry should include education, experience, and sophistication of the debtor...the volume of the debtor's business; the amount of credit extended to the debtor and any other circumstances relevant to the decision of reasonableness). Discharge should not be denied if the debtor's records, though poorly organized, are reasonably sufficient to ascertain the debtor's financial condition. *Riley,* 305 B.R. at 883.

There is no allegation that Debtor destroyed, concealed or falsified any documents. The only question is whether the business records in evidence are sufficient for the Court to be able to reconstruct what happened in the time frame leading up to Debtor's bankruptcy filing.

Debtor is in the construction business. He incorporated J. Lue. Siding LLC and he accepts jobs through his LLC as a sub-contractor for Precision Construction. He testified that he has done some side jobs on his own in the past, but that he did not do any side jobs in 2008. He testified that he does not have many business records other than receipts for expenses, which he pays up front and then receives reimbursement. His tax returns for 2005 through 2007 were admitted into evidence, as were his pay stubs for three months prior to filing his petition.[3] The average of the first three months of his 2008 pay stubs indicates that he is on course to make a slight annual increase in his gross income in 2008 which is consistent with the increase he earned the previous two tax years. Based on the evidence, although Debtor is a business owner, he has no employees, no business assets, and he is not seeking large extensions of credit. He receives a pay check similar to the way an hourly employee would. He was not running a sophisticated commercial construction business where any sort of elaborate or even unsophisticated bookkeeping system would be expected. His tax returns and pay stubs are really all that are needed to ascertain his overall financial picture and because those are in evidence, the Court finds no merit to this claim.

### 4. §727(a)(4)(A): False Oath or Account

In order to deny a discharge to a debtor under §727(a)(4)(A), the plaintiff must establish that: (1) debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter. *Korte v. United States of America Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001). The Debtor's signature on the Petition, the Schedules of Assets and Liabilities and Statement of Financial Affairs, verified

---

[3] Debtor's Exhibit's 1- 4.

and made under penalty of perjury pursuant to Rule 1008, are declarations which have the force and effect of oaths of the kind encompassed by the discharge exception for making a false oath. *In re Bren*, 303 B.R. 610, 613 (B.A.P. 8th Cir.2004), *rev'd on other grounds*, 122 Fed. Appx. 285 (8th Cir. 2005). The proper functioning of the entire bankruptcy process is dependent upon the debtor providing complete, accurate and reliable information in the petition and other documents submitted with the filing of the case, so that parties in interest may evaluate the debtor's assets and liabilities and appropriately administer the case. *Bren*, 303 B.R. at 613. A debtor's omission of assets from his bankruptcy schedules or statement of financial affairs may constitute a false oath under §727(a)(4)(A). *In re Davison,* 296 B.R. 841, 847 (Bankr. D. Kan.2003).

Since an admission or other direct evidence of fraudulent intent is rarely available, actual intent may be established by circumstantial evidence. *Gray*, 295 B.R. at 343; *Weese v. Lambert (In re Lambert)*, 280 B.R. 463, 468 (Bankr. W.D. Mo.2002). A series or pattern of errors or omissions may have the effect of giving rise to an inference of intent to deceive. *Bren*, 303 B.R. at 614; *Gray*, 295 B.R. at 344. Section 727(a)(4)(A) provides a harsh penalty for a debtor who intentionally secrets information from the court, the trustee and creditors. "The petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *In re Sears*, 246 B.R. 341, 347 *(*citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992)).

Plaintiff contends that Debtor intentionally made numerous, material representations that constitute a false oath or account by failing to disclose: (1) firearms and ammunition collection, (2) a Coachman camper, (3) a trailer, (4) a 1998 Ford pick-up truck, (5) an ATV, (6) a boat, motor and trailer, (7) tools, (8) a 1981 Toyota pick-up truck, (9) some trusses and (10) a race car.

Plaintiff also asserts that Debtor intentionally misrepresented his spouse's and son's income.

The evidence about Debtor's alleged failure to list his "extensive firearm weapons collection (which includes assault rifles) and [an] ammunition collection" is confusing and unpersuasive. Plaintiff attempted to refresh Debtor's memory regarding a time when Plaintiff was in Debtor's home, nearly 8 years prior to the time Debtor filed for bankruptcy, and there being an extensive collection of firearms and ammunition in his home. Debtor did not recall having all the firearms that Plaintiff seemed to recall seeing and, even if he had, the amount and/or type of assets that Debtor had in his home 8 years ago is completely irrelevant to these proceedings and has absolutely no bearing on whether Debtor listed the assets that he owned at the time of filing. The only specific firearms that were identified at trial as being intentionally left off of Debtor's Schedules are: a pistol, a S-K8 and a rifle. Debtor testified that these items were not listed in his Schedules because the pistol belongs to his spouse, which was her property from a previous marriage, and that he gave the SK-8 and the rifle to his son, therefore, he was under no obligation to list these items. Plaintiff attempted to undermine Debtor's contention that the pistol in his possession is his spouse's by asking her why she did not list this asset in her bankruptcy schedules, which were filed in the previous year. Her response was that she did not know that she needed to list it, but that it was her property and that she received it from her prior marriage.

The evidence regarding the Coachman camper is that it has been in Debtor's possession and on his property for a couple of years. Debtor testified that at the time of the filing, the camper belonged to Carol Smith. Sheriff Hoffman's title search for the camper confirmed Debtor's testimony. Debtor testified that legal ownership was never transferred to him, which is the reason

he did not include it in his Schedules.  Carol Smith testified that she may have considered selling the camper to Debtor at some point while it was in his possession, but that no such transaction ever occurred, and that she never received any money from Debtor for the camper.  She explained that the camper had a deep sentimental value to her and her husband and when he passed away, she simply wanted it off of her property, which is the reason she allowed Debtor to have it on his property.  She testified that she recently took possession of the camper and sold it to a third party.

Debtor asserts that he unintentionally omitted the trailer from his Schedules.  He described this asset as a 16 ft flatbed trailer that has a wooden bed, which is rotting, and a metal frame.  He inherited this trailer from his father and uses it to haul his tools. He testified that he thought it had little, if any, value which is the reason he left it off of his Schedules, but that he intends to amend his Schedules to include it.

Debtor testified that the 1998 Ford pick-up truck was involved in an auto accident which resulted in a declaration of a total loss by his insurance company.[4]  Debtor received insurance proceeds and used the same to pay down the loan on the truck and obtain alternative transportation.  The truck was his wife's and was no longer in her possession at the time he filed his petition.  The ATV was not listed in Debtor's Schedules because his son purchased it and the title to it was initially open and then in his spouse's name.  Debtor did not list the boat, motor or trailer because he had scrapped those items 2 years prior to filing for bankruptcy.  Debtor did not list the trusses, which he testified he purchased for a construction job which never came through,

---

[4] Debtor's Exhibits 5-8.

10

in his Schedules because they are rotted out and have no value.[5] Debtor did not list the 1981 Toyota pick-up truck as his personal property because he is only the lien holder on this vehicle. It is registered to a third party. It has little or no value, because it does not run. He also did not list the race car because this is his spouse's property. She testified that she purchased the race car with her 2004 and 2005 tax refunds, both of which she received late due to delays related to them being filed jointly with her ex-husband.

Debtor testified that he initially did not list his tools because he did not think that they had any value.[6] After the §341 meeting, and having received advice from his attorney, he understood the proper measure of value was that of liquidation and amended his Schedules to reflect a liquidation value of $1,120. Debtor should have known that he was required to list this asset in his Schedules at the time of filing. Because the Court finds his testimony regarding being confused about the proper measure of value believable, and because he has since amended his Schedules to reflect a reasonable value for this asset, the Court does not find Debtor's initial failure to list the asset significant enough to warrant a denial of discharge under §727(a)(4).

Debtor's spouse testified that she cleans houses and makes $190 per month which is the amount disclosed in Debtor's Schedule I. Plaintiff attempted to show that Debtor's spouse also generates income from her race car and graphics design business, which Debtor failed report. The evidence, however, is that in 2008, Debtor and his spouse lost money on both the racing and

---

[5] Plaintiff did not allege that Debtor failed to list the trusses in the Complaint, however, pursuant to Bankruptcy Rule 7015(b)(2), because the issue was tried by the parties, it must be treated as if raised in the pleadings.

[6] The issue of whether Debtor intentionally failed to disclose his tools will be treated as if it was initially raised in the pleadings. See Bankruptcy Rule 7015(b)(2).

the graphics business. Debtor's spouse testified that racing is their hobby. She testified that she did not make a profit from racing, and in fact they suffered a net loss of about a thousand dollars in 2008. She testified that she experienced a net loss on her graphic design business also, which is the reason the only income disclosed in Debtor's Schedules is from her steady cleaning job.

Debtor's Schedule I reports income for his son of $637 a month of Social Security assistance. Plaintiff alleges that Debtor's failure to report his son's income earned for mowing lawns, installing televisions or doing other odd jobs for neighbors or friends is material and sufficient to warrant a denial of discharge. The Court disagrees. The evidence is that Debtor's son is mentally challenged and has never been able to maintain a regular, 40/hr a week job. Debtor testified that his son's disability allows him to earn a minimal amount of extra income, but that his jobs are sporadic and his extra income is insignificant and unpredictable, which is the reason he did not report it in his Schedules.

Based on the evidence presented and as discussed above, the Court is convinced that Debtor did not knowingly and fraudulently omit information from his Schedules or intentionally record inaccurate information regarding his spouse's and son's income. Although Debtor did fail to list two assets in his Schedule B, he amended his Schedules to include his tools and testified that his intent is to amend his Schedules a second time to add the trailer. Plaintiff failed to rebut with any credible evidence any of Debtor's explanations regarding the remaining assets in question or Debtor's contentions regarding his full disclosure of his spouse's and son's income. The Court finds Debtor's explanations reasonable and credible. There is insufficient evidence in the record to support a finding that denial of a discharge is warranted under §727(a)(4)(A).

In the underlying bankruptcy case, Plaintiff filed two motions for sanctions against Debtor

and his counsel regarding two assets identified above: the Coachman Camper and the trailer. In both of the motions, Plaintiff alleges that Debtor owns the respective asset, that he failed to list it in his Schedules and that he failed to disclose it at his §341 meeting. In each motion, he requests that the Court order sanctions and costs against Debtor and his counsel for said failures. As is thoroughly outlined above, Debtor did not list the Coachman camper as an asset in his Schedules because he did not own that asset at the time of filing (nor has he ever legally owned it). He did not list the trailer because he does not think it has any value, therefore, he did not think that he needed to. The Court found no basis to deny Debtor a discharge pursuant to §727(a)(4) for the alleged failures to disclose these two assets in his Schedules, and for the same reasons as outlined above, the Court denies Plaintiff's motions for sanctions regarding both the Coachman camper and the trailer.

### B. Exceptions to Discharge: §523(A)(6): Willful and Malicious Injury

The Bankruptcy Code exempts certain debts from discharge including debts for "willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). In the Eighth Circuit, the terms "willful" and "malicious" are two distinct elements, each of which must be shown to establish an exception to discharge. *Fisher v. Scarborough (In re Scarborough)*, 171 F.3d 638, 640 (8th Cir.1999); *see also In re Patch*, 2008 WL 2205270, *6 (8th Cir. 2008) ("willful" and "malicious" are not synonymous and establish separate statutory elements, both of which must be established).

The first prong of a § 523(a)(6) analysis requires a finding of "wilfulness." The term "willful" under § 523(a)(6) is controlled by the Supreme Court's decision in *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1988). There, the Court decided a split

in the circuits over the meaning of "willful," holding that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. Because the word "willful" in § 523(a)(6) modifies the word "injury," the Supreme Court concluded that "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 61. The Supreme Court observed that the § 523(a)(6) formulation "triggers in the lawyer's mind the category 'intentional torts,'. . . [which] generally requires that the actor intend 'the consequences of an act,' not simply 'the act itself'." *Id*. at 61 *quoting* the Restatement (Second) of Torts § 8A cmt. A (1964).

The second prong of a § 523(a)(6) analysis requires a showing that Debtor was "malicious." In order to have a meaning independent from willful, ". . . malice must apply only to conduct more culpable than that which is in reckless disregard of creditors' interests and expectancies." *Erickson v. Halverson (In re Halverson)*, 226 B.R. 22, 26 (Bankr. D. Minn.1998). "An injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's tortious conduct was certain or almost certain to cause harm." *In re Stage*, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005) *citing Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996); *see also, In re Miera* 926 F.2d 741, 743 (8th Cir. 1991); *In re Long,* 774 F.2d 875, 881 (8th Cir.1985)*.*

Plaintiff asserts that Debtor should not be allowed to discharge the $200,000 debt which was established by the state court Judgment because the debt was incurred as a result of Debtor's willful and malicious acts. The Judgment includes findings which state that Debtor "knowingly,

deliberately and maliciously" made false criminal complaints[7] against Plaintiff when he alleged Plaintiff had child pornography on his personal computer, that he showed the pornography to Debtor's minor son and that Plaintiff was molesting neighborhood children.[8] The Court determined in the Order denying summary judgment that the mere finding in a state court judgment that a debtor acted knowingly, deliberately and maliciously, without more, would be

---

[7] As this Court held in its Order denying the Plaintiff's motion for summary judgment, the order of the trial court, while not conducted after a full evidentiary trial, is nonetheless, according to Missouri law, entitled to be treated as a judgment on the merits and have collateral estoppel effect. This Court has recognized the effect of the Judgment by barring Defendant from re-litigating whether Plaintiff has a defamation claim against him or the amount of the damages. On the other hand, this Court was not presented with a transcript of the evidentiary hearing which supposedly occurred prior to the entry of final judgment. Accordingly, it is unclear that the characterization of the Defendant's conduct and the findings in the Judgment purporting to conclude that Debtor "knowingly, deliberately and maliciously made false criminal complaints" were supported by evidence. In the Order on the motion for summary judgment, this Court indicated why the bare findings that Defendant's conduct was "knowing, deliberate and malicious" were insufficient to find it was also willful and malicious. While the Court is somewhat troubled by the use of the adjective "false" to describe the type of criminal complaints made, it does not believe that it is required to find that Debtor knew that the criminal complaints were in fact false when he made them. Given the opportunity in this proceeding, the Court concludes that Plaintiff has failed to produce sufficient evidence to establish that the terms used in the Judgment actually describe the heightened level of conduct required to find the claim non-dischargeable under § 523(a)(6). There is sufficient evidence in this record to support the Court's finding that Debtor made the criminal complaints based on credible information received from his son and others in the community and there was enough other circumstantial evidence present for him to conclude that making the reports was appropriate. The Court is convinced that Debtor's motive in making the police reports was to protect his son and other children, not to harm the Plaintiff's reputation and ability to generate income.

[8] The Judgment also contained findings regarding Debtor making reports alleging Plaintiff was growing marijuana in his home, that he was engaging in the unauthorized practice of law and that Debtor's actions set into motion a chain of events which violated Plaintiff's Fourth Amendment rights. Plaintiff produced no evidence at trial regarding whether Debtor's reports of these allegations were willful and malicious under §523(a)(6), and therefore, as to these particular allegations, the Court finds Plaintiff failed to meet his burden with regard to establishing that the debt should be non-dischargeable pursuant to §523(a)(6).

15

insufficient for a finding of willfulness and maliciousness under §523(a)(6). The Court noted in its summary judgment Order that in order to prove the level of intention that is required in the 8th Circuit to establish willfulness under §523(a)(6), Plaintiff would need to produce evidence tending to show that Debtor not only knowingly and intentionally made the false police reports, but that he also intended the injury that Plaintiff alleges resulted, i.e. the harm to his reputation and the resulting insult to his ability to generate income.

At the trial, there was very little, if any, material evidence presented which would prove that Debtor intended to harm Plaintiff's reputation or impact his ability to generate income. Plaintiff attempted to show that Debtor hated Plaintiff and because he hated him, he intentionally made false police reports and, therefore, harmed his reputation and employability. Sheriff Tawney testified that Debtor expressed hatred toward Plaintiff. Sheriff Hoffman testified that Debtor had expressed anger and hostility toward Plainitff. Robin Michelle Apel testified that in August of 2000, she had a discussion with Debtor involving how to "ruin" Plainitff. However, there is no evidence of an actual plan or strategy to actually do anything to harm Plaintiff. The fact that Plaintiff was able to produce witnesses who know that Debtor does not like Plaintiff is neither surprising under the circumstances of this case, nor is it persuasive in terms of establishing that the police reports were in any way related to a detailed plan to ruin Plaintiff's reputation or negatively impact his ability to generate an income.

The magnitude of Debtor's hatred and disdain for Plaintiff is not in question. Plaintiff's brother repeatedly sodomized Debtor's mentally handicapped child, and Plaintiff has, for reasons unknown to the Court, continually harassed Debtor since his brother's arrest. How could Debtor not harbor some ill will toward Plaintiff? The question, for purposes of determining whether

Debtor's debt is non-dischargeable pursuant to §523(a)(6) is whether Plaintiff has produced sufficient evidence to establish that when Debtor made the police reports regarding child pornography being on Plaintiff's computer and that Plaintiff was molesting children in the neighborhood, that Debtor intended to harm Plaintiff's reputation and his ability to generate income, and the Court finds that he has not.

Debtor freely admitted that he was enraged by the fact that Plaintiff's brother had sexually molested his child and that he thought Plaintiff knew about it and could have stopped it. However, he testified that the reason he made the police report was because his son told him there was child pornography on Plaintiff's computer.   What action is a reasonable parent suppose to take with that type of information, other than report it to the legal authorities?  He also testified that he heard rumors regarding Plaintiff sexually molesting neighborhood kids and, after inquiring about what he should do with that information, he made another police report.  Again, even if the rumors turned out to be unsubstantiated, considering the fact that one child had been sexually molested in that home, and there was an allegation of child pornography on the homeowner's computer, wasn't Debtor justified to go to the police with the information he had learned, even though it turned out to be unsubstantiated?  Isn't that the reason communities have investigative units?  Debtor testified that he filed the reports because he was concerned for the safety of other children, not because he intended to harm Plaintiff's reputation.  He said that Plaintiff's constant harassment was certainly a nuisance, but that he did not make the police reports in an effort to retaliate against Plaintiff and, based on the circumstances of this case, the Court finds his testimony completely credible and reasonable.

With regard to Plaintiff's income, Debtor testified that to his knowledge Plaintiff has not

had a job for the entire 15 years that he has known him. Based on this, how could Debtor have possibly intended to harm Plaintiff's ability to generate income when he did not even think that he worked in the first place. Plaintiff's assertion is that he did some private investigation work for an attorney who happened to review the police report that was made and then decided not to hire him based on that review. Thus, even if Debtor did know that Plaintiff earned income, the Court finds it much too speculative to conclude that by making a police report about suspected child pornography and child molestation, that Debtor intended that a potential employer would be privy to that information and then deny Plaintiff employment based thereon. The Court finds that Plaintiff has failed to establish his burden of proving that Debtor willfully caused harm to Debtor pursuant to §523(a)(6).

Plaintiff's evidence that Debtor acted maliciously under §532(a)(6) is also insufficient to warrant a finding of non-dischargeability. To establish that Debtor's actions were malicious under §532(a)(6), Plaintiff needed to prove that Debtor was certain or almost certain that making police reports regarding Plaintiff having child pornography on his computer and showing it to Debtor's son and Plaintiff molesting children in the neighborhood would cause Plaintiff harm. The only evidence in the record is that Debtor made reports, to the proper legal authority, which were based on information he received from his own son and from some people in his community, regarding sexual crimes potentially being perpetrated against children. Plaintiff asserts that his reputation and his ability to generate income were harmed by these reports. There is no evidence that Debtor engaged in activities such as picketing outside Plaintiff's home or slandering Plaintiff by sending a mailer containing the allegations of wrongdoing to all of Plaintiff's neighbors or potential employers, or some similar highly public act which would seem

to be more targeted toward negatively impacting one's reputation and income, rather than being the response of a concerned father and citizen. Making a police report about a potential crime, especially when the alleged suspect's brother was recently arrested for a crime of a similar nature, does not seem unreasonable under the circumstances.

### III. CONCLUSION AND ORDER

For the reasons stated above, Plaintiff's request for relief under 11 U.S.C. §§727(a)(2), (a)(3) and (a)(4) is hereby denied and Plaintiff's request for relief under 11 U.S.C. § 523(a)(6) is denied. Plaintiff's Motions for Sanctions regarding the Coachman camper and the trailer are denied. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

ENTERED this 18th day of February 2009.

/s/ Dennis R. Dow
United States Bankruptcy Judge

Copies to:
David Duvall
Linda G. Harris
John Reed, Trustee